IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

MICH AUREL, #317239                           *

            Plaintiff,

      v.                                 *   CIVIL ACTION NO. ELH-14-374

NBCI WARDEN B. SHEARIN, *et al*.              *

           Defendants.           *

                            *****

MEMORANDUM

On February 6, 2014, Mich Aurel, the self-represented plaintiff, is an inmate at the North Branch Correctional Institution ("NBCI"). He has filed a civil rights action pursuant to 42 U.S.C. § 1983, ECF 1, claiming that he suffers from respiratory disorders (hyperlipidemia, "bronchiole" and tuberculosis) and has been denied leave to maintain a fan in his cell, which he describes as "hot, hot, hot." Further, Aurel complains that the condition is posing a "serious danger" to his health, as he is choking in his sleep.[1] *Id*. Defendants are former Warden Bobby Shearin;[2] former Chief of Security Keith Arnold; Correctional Officer ("CO") II Christopher Ortt; CO II Troy Parsons; CO II Jesse Lambert; CO II Nicholas Soltas; and CO II Christopher Preston.[3]

---

[1] Aurel also raises a naked assertion that he has been subjected to forms of "institution torture" and claims that on January 28, 2014, his life was threatened by several NBCI officers. ECF 16 at 2, 3, & 6. As Aurel provides no particular facts regarding these claims, the conclusory allegations shall be dismissed, without prejudice.

[2] Frank Bishop, Jr. is now the Warden of NBCI.

[3] The Clerk shall correct the spellings of the names of Correctional Officers Soltes, Oritt, Lambut, and Parson to Soltas, Ortt, Lambert, and Parsons. *See* ECF 8.

Defendants Shearin, Arnold, Soltas, Ortt, Lambert, Preston, and Parsons have filed a motion to dismiss or, in the alternative, motion for summary judgment,[4] ECF 16, supported by many exhibits. Aurel has filed an opposition. ECF 18. In addition, Aurel has filed a motion for a temporary restraining order ("TRO"), claiming that he has been harassed and discriminated against due to his religion and race. ECF 19.

No hearing is needed to resolve the motions. *See* Local Rule 105.6. (D. Md. 2014). For the reasons that follow, defendants' motion to dismiss or, in the alternative, for summary judgment, construed as a motion for summary judgment, shall be granted. Aurel's motion for a TRO shall be denied.

## I. Standard of Review for Defendants' Motion

Defendants' motion is styled as a motion to dismiss under Fed. R. Civ. P. 12(b)(6) or, in the alternative, for summary judgment under Fed. R. Civ. P. 56. A motion styled in this manner implicates the court's discretion under Rule 12(d) of the Federal Rules of Civil Procedure. *See Kensington Vol. Fire Dept., Inc. v. Montgomery County*, 788 F. Supp. 2d 431, 436-37 (D. Md. 2011). Ordinarily, a court "is not to consider matters outside the pleadings or resolve factual disputes when ruling on a motion to dismiss." *Bosiger v. U.S. Airways*, 510 F.3d 442, 450 (4th Cir. 2007). However, under Rule 12(b)(6), a court, in its discretion, may consider matters outside of the pleadings, pursuant to Rule 12(d). If the court does so, "the motion must be treated as one for summary judgment under Rule 56," and "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d).

---

[4] Defendants Miller, Smith, Tuner, Parton, and Ceph could not be identified and thus they have not been served. *See* ECF 8.

When the movant expressly captions its motion "in the alternative" as one for summary judgment, and submits matters outside the pleadings for the court's consideration, the parties are deemed to be on notice that conversion under Rule 12(d) may occur.  In that circumstance, the court "does not have an obligation to notify parties of the obvious." *Laughlin v. Metro. Wash. Airports Auth.*, 149 F.3d 253, 261 (4th Cir. 1998).[5]

A district judge has "complete discretion to determine whether or not to accept the submission of any material beyond the pleadings that is offered in conjunction with a Rule 12(b)(6) motion and rely on it, thereby converting the motion, or to reject it or simply not consider it." 5C WRIGHT & MILLER, FEDERAL PRACTICE & PROCEDURE § 1366, at 159 (3d ed. 2004, 2011 Supp.). This discretion "should be exercised with great caution and attention to the parties' procedural rights." *Id.* at 149. In general, courts are guided by whether consideration of extraneous material "is likely to facilitate the disposition of the action," and "whether discovery prior to the utilization of the summary judgment procedure" is necessary.  *Id.* at 165-167.

Ordinarily, summary judgment is inappropriate "where the parties have not had an opportunity for reasonable discovery." *E.I. du Pont de Nemours and Co. v. Kolon Indus., Inc.,* 637 F.3d 435, 448-49 (4th Cir. 2011).  However, "the party opposing summary judgment 'cannot complain that summary judgment was granted without discovery unless that party has made an attempt to oppose the motion on the grounds that more time was needed for discovery.'" *Harrods*

---

[5] In contrast, a court may not convert a motion to dismiss to one for summary judgment *sua sponte*, unless it gives notice to the parties that it will do so. *See Laughlin*, 149 F.3d at 261 (stating that a district court "clearly has an obligation to notify parties regarding any court-instituted changes" in the posture of a motion, including conversion under Rule 12(d)); *Finley Lines Joint Protective Bd. Unit 200 v. Norfolk So. Corp.*, 109 F.3d 993, 997 (4th Cir. 1997) ("[A] Rule 12(b)(6) motion to dismiss supported by extraneous materials cannot be regarded as one for summary judgment until the district court acts to convert the motion by indicating that it will not exclude from its consideration

*Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 244 (4th Cir. 2002) (quoting *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 961 (4th Cir. 1996)).   To raise adequately the issue that discovery is needed, the non-movant typically must file an affidavit or declaration pursuant to Rule 56(d) (formerly Rule 56(f)), explaining why, "for specified reasons, it cannot present facts essential to justify its opposition," without needed discovery.  Fed. R. Civ. P. 56(d); *see Harrods*, 302 F.3d at 244-45 (discussing affidavit requirement of former Rule 56(f)).

Notably, "'Rule 56(d) affidavits cannot simply demand discovery for the sake of discovery.'" *Hamilton v. Mayor & City Council of Baltimore*, 807 F. Supp. 2d 331, 342 (D. Md. 2011) (quoting *Young v. UPS*, 2011 WL 665321, at *20 (D. Md. Feb. 14, 2011), *aff'd.*, 707 F.3d 437 (4th Cir. 2013), *cert. granted*, ____ U.S. ____; 134 S.Ct. 2898 (2014)).   "Rather, to justify a denial of summary judgment on the grounds that additional discovery is necessary, the facts identified in a Rule 56 affidavit must be 'essential to [the] opposition.'"  *Scott v. Nuvell Fin. Servs., LLC*, 789 F. Supp. 2d 637, 641 (D. Md. 2011) (alteration in original) (citation omitted).  A non-moving party's Rule 56(d) request for additional discovery is properly denied "where the additional evidence sought for discovery would not have by itself created a genuine issue of material fact sufficient to defeat summary judgment."  *Strag v. Bd. of Trs., Craven Cmty. Coll.*, 55 F.3d 943, 954 (4th Cir. 1995); *see Amirmokri v. Abraham*, 437 F. Supp. 2d 414, 420 (D. Md. 2006), *aff'd*, 266 F. App'x 274 (4th Cir.), *cert. denied*, 555 U.S. 885 (2008).

If a non-moving party believes that further discovery is necessary before consideration of summary judgment, the party fails to file a Rule 56(d) affidavit at his peril, because "'the failure to file an affidavit . . . is itself sufficient grounds to reject a claim that the opportunity for discovery was

---

of the motion the supporting extraneous materials.").

4

inadequate.'" *Harrods,* 302 F.3d at 244 (citations omitted).  On the other hand, the non-moving party's failure to file a Rule 56(d) affidavit cannot obligate a court to issue a summary judgment ruling that is obviously premature.

Although the Fourth Circuit has placed "'great weight'" on the Rule 56(d) affidavit, and has said that a mere "'reference to Rule 56(f) [now Rule 56(d)] and the need for additional discovery in a memorandum of law in opposition to a motion for summary judgment is not an adequate substitute for [an] affidavit,'" the appellate court has "not always insisted" on a Rule 56(d) affidavit. *Id.* (internal citations omitted). According to the Fourth Circuit, failure to file an affidavit may be excused "if the nonmoving party has adequately informed the district court that the motion is premature and that more discovery is necessary" and the "nonmoving party's objections before the district court 'served as the functional equivalent of an affidavit.'" *Id.* at 244-45 (internal citations omitted).

Here, no request for discovery has been filed.  But, plaintiff has filed an opposition to defendants' motion.  I am satisfied that it is appropriate to consider the defense motion as a motion for summary judgment, because it will facilitate resolution of the case.

Summary judgment is governed by Fed. R. Civ. P. 56(a), which provides, in part: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  As the Fourth Circuit recently observed, Fed. R. Civ. P. 56 "is a mechanism to obviate trial . . . ." *Boyer-Liberto v. Fontainbleau Corp.*, 752 F.3d 350, 355 (2014), *rehearing en banc granted* (July 1, 2014).

The Supreme Court has clarified that not every factual dispute will defeat the motion.  "By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between

the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U. S. 242, 247-48 (1986) (emphasis in original). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Id.* at 248. There is a genuine issue as to material fact "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

"The party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 525 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)), *cert. denied*, 541 U.S. 1042 (2004). The court should "prevent factually unsupported claims and defenses from proceeding to trial." *Id.* at 526 (citation and internal quotation marks omitted).

In resolving a motion for summary judgment, a district court must view all of the facts, including reasonable inferences to be drawn from them, in the light most favorable to the nonmoving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Greater Baltimore Ctr. For Pregnancy Concerns, Inc. v. Mayor and City Council of Balt.*, 721 F.3d 264, 283 (4th Cir. 2013); *FDIC v. Cashion*, 720 F.3d 169, 173 (4th Cir. 2013). The district court's "function" is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249. Moreover, the court may not make credibility determinations on summary judgment. *Black &. Decker Corp. v. United States*, 436 F.3d 431, 442 (4th Cir. 2006); *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 644-45 (4th Cir. 2002).

Generally, in the face of conflicting evidence, such as competing affidavits, summary judgment is not appropriate, because it is the function of the fact-finder to resolve factual disputes,

6

including matters of witness credibility.  *See*, *e.g.*, *Boone v. Stallings*, ____ Fed. App'x. ____, No. 14-6521 (4th Cir. Sept. 11, 2014) (per curiam).  However, to defeat summary judgment, conflicting evidence must give rise to a *genuine* dispute of material fact.  *See Anderson*, 477 U.S. at 247-48.  If "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," then a dispute of material fact precludes summary judgment.  *Id.* at 248.  On the other hand, a court must award summary judgment if the evidence "is so one-sided that one party must prevail as a matter of law."  *Id.* at 252.  And, "the mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff."  *Id.*

Because plaintiff is self-represented, his submissions are liberally construed.  *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007). But, as noted, the court must also abide by the "'affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial.'" *Bouchat*, 346 F.3d at 526 (internal quotation marks omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778–79 (4th Cir. 1993), and citing *Celotex Corporation v. Catrett*, 477 U.S. 317, 323–24 (1986)), *cert. denied*, 541 U.S. 1042 (2004).

## II.  The TRO Motion

"A preliminary injunction is an extraordinary remedy never awarded as of right." *Winter v. Natural Res. Def. Council, Inc.,* 555 U.S. 7, 24 (2008) (citing *Munaf v. Geren.* 553 U.S. 674, 689–90 (2008)); *Real Truth About Obama, Inc. v. Fed. Election Comm'n,* 575 F.3d 342, 345 (4th Cir.2009), *vacated on other grounds and remanded,* 130 S.Ct. 2371 (2010), *reaff'd in part and remanded,* 607 F.3d 355 (4th Cir. 2010).   It is a remedy that is " 'granted only sparingly and in limited circumstances." ' *Micro Strategy, Inc. v. Motorola, Inc.,* 245 F.3d 335, 339 (4th Cir. 2001) (quoting

*Direx Israel, Ltd. v. Breakthrough Med. Corp.,* 952 F.2d 802, 816 (4th Cir.1991)).

Thus, "[a] plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter,* 555 U.S. at 20 (citing *Munaf v. Geren,* 553 U.S. 674, 689–90 (2008); *Amoco Prod. Co. v. Gambell,* 480 U.S. 531, 542 (1987); *Weinberger v. Romero–Barcelo,* 456 U.S. 305, 311–12 (1982)); *see also Real Truth About Obama,* 575 F.3d at 345 (applying the standard for preliminary injunctions set forth in *Winter*).  A preliminary injunction cannot be issued unless all four of these elements are met, and "'[p]laintiff bears the burden of establishing that each of these factors supports granting the injunction.'"  *Direx Israel,* 952 F.2d at 812 (quoting *Tech. Publ'g Co. v. Lebhar–Friedman, Inc.,* 729 F.2d 1136, 1139 (7th Cir.1984); *Shaffer v. Globe Prod., Inc.,* 721 F.2d 1121, 1123 (7th Cir.1983)). This same analysis applies to a motion for preliminary injunction and a request for temporary restraining order. *See Hoechst Diafoil Co. v. Nan Ya Plastics Corp.,* 174 F.3d 411, 422 (4th Cir. 1999).

Aurel has failed to show that he will succeed on the merits or that he will be subject to immediate and irreparable harm if emergency relief is not granted, injunctive relief is not warranted. Therefore, the TRO motion shall be denied.

## II.  Factual Summary

Lt. Edward Twigg, the Correctional Maintenance Officer Supervisor at NBCI, affirms that every tier of the NBCI Housing Units has a ventilation system that brings in outside air, and each individual cell has an exhaust vent. ECF 16-2, Ex. 1 (Declaration of Twigg).  Twigg avers that the American Correctional Association ("ACA") has established ventilation guidelines that the Maryland

Department of Public Safety and Correctional Services ("DPSCS") follows.  To monitor guideline compliance, the DPSCS uses the services of the independent contractor-Control Systems Incorporated ("CSI")-to test the air flow within the facilities every three years.  *Id*. ¶ 5.  In addition, every four months the DPSCS conducts further testing to ensure that the ventilation system continues to function properly in between the testing conducted by CSI.  *Id*.  ¶ 6.

Randy Durst, a NBCI Correctional Case Manager, also provided a Declaration, supported by exhibits.  *See* ECF 16-3, Ex. 2.[6]  The exhibits show that in 2009, Frank Bishop, Jr., then Chief of Security at NBCI, introduced a policy intended to prevent energy waste and to enhance cost savings, by locking NBCI cell windows on November 1 and re-opening them on or about April 1.  ECF 16-3 at 2.  So, during warmer weather the windows may be opened.  *Id*.

On November 17, 2013, a broken fan was confiscated from Aurel.  The fan's cover had been removed, exposing the fan blades and therefore creating a safety hazard.   The cover was not the manufactured cover for the fan, but was taken from another model which did not fit Aurel's fan. ECF 16-5, Ex. 4 (Declaration of Robert Harris); ECF 16-6, Ex. 5.

The record shows that Aurel filed forty-seven Administrative Remedy Procedure ("ARP") grievances since he arrived at NBCI in 2013.   Defendants state that he filed one ARP concerning the need for a fan for medical reasons. The ARP (NBCI-4238-13) was dismissed because Aurel failed to submit a medical order establishing that he needed a fan.  ECF 16-7, Ex. 6.  According to Scott Oakley, Executive Director of the Inmate Grievance Office ("IGO"), Aurel failed to appeal that decision to the IGO.  ECF 16-8, Ex. 7 (Declaration of Oakley).

---

[6]  The Twigg and Durst declarations (ECF 16, Exs. 1 & 2) were originally prepared and submitted in another federal civil rights case.

Defendants claim, in reliance on specific portions of Aurel's medical records, that there is no documentation showing that he was physically weakened or incapacitated by the lack of a fan. They maintain that the records, which were selected to reflect his complaints of asthma, respiratory issues, lung disease and heat, reflect that Aurel received medical evaluations for subjective complaints of respiratory problems throughout 2013 into May of 2014, and his vital signs and general assessments were unremarkable.  ECF 16-9, Ex. 8 (medical records-61 pages).

In his opposition Aurel claims that he suffers from various medical ailments (tuberculosis, hepatitis, and ankle pain) and has been denied medical treatment.  ECF 18.  He also complains that he has been "tortured" by medical staff.  Aurel states that NBCI has no ventilation in the cells and there is dust in the ventilation system.  He maintains that NBCI needs to have its housing unit windows open 365 days a year.   ECF 18.

III.  **Discussion**

A.  Exhaustion of Administrative Remedies

According to the uncontroverted Declaration of IGO Executive Director Oakley, Aurel  did not exhaust his ARP as to the claim raised herein.

The Prisoner Litigation Reform Act ("PLRA") provides, in pertinent part, 42 U.S.C. §1997(e):

> (a) Applicability of administrative remedies
> No action shall be brought with respect to prison conditions under [42 U.S.C.] section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

For purposes of the PLRA, "the term 'prisoner' means any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary

program." 42 U.S.C. § 1997e(h).  The phrase "prison conditions" encompasses "all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002).

Notably, administrative exhaustion under § 1997e(a) is not a jurisdictional requirement and does not impose a heightened pleading requirement on the prisoner.  Rather, the failure to exhaust administrative remedies is an affirmative defense to be pleaded and proven by defendant(s).  *See Jones v. Bock*, 549 U.S. 199, 215-216 (2007); *Anderson v. XYZ Correctional Health Services, Inc.*, 407 F.2d 674, 682 (4th Cir. 2005).  The DPSCS has made an administrative remedy procedure "available" to Maryland state prisoners, within the meaning of 42 U.S.C. § 1997e(a), for the submission of "grievance[s] against   . . . official[s] or employee[s] of the Division of Correction ["DOC"]."  Md. Code (2008 Repl. Vol., 2011 Supp.), § 10-206(a) of the Correctional Services Article ("C.S."); *see generally* C.S. §§ 10-201 *et seq*.  Regulations promulgated by DPSCS concerning the administrative remedy procedure define a "grievance' to include a "complaint of any individual in the custody of the [DOC] . . . against any officials or employees of the [DOC] . . . arising from the circumstances of custody or confinement."  Code of Maryland Regulations ("COMAR") 12.07.01.01B(8).[7]

---

[7] Maryland appellate case law indicates that the administrative grievance procedure does not encompass "'every kind of civil matter that could be brought by a DOC inmate.'"  *Massey v. Galley*, 392 Md. 634, 646, 898 A.2d 951, 958 (2006) (citation omitted).  Rather, it applies only to matters that "relate to or involve a prisoner's 'conditions of confinement.'"  *Id.* at 651, 898 A.2d at 960 (citation omitted).  Thus, the grievance procedure does not apply to requests for public information under the Maryland Public Information Act, *see id.*, nor does it apply to medical malpractice claims against private medical service providers who treat inmates under contract with the DOC.  *See Abramson v. Correctional Med. Servs., Inc.*, 359 Md. 238, 753 A.2d 501 (2000).

Moreover, the administrative grievance procedure does not apply to claims for compensation for disabilities resulting from "personal injury arising out of and in the course of [an inmate's] work

In the Maryland correctional system, if the particular institution in which an inmate is incarcerated provides an administrative remedy procedure, the inmate must complete the ARP process as a condition precedent to further review of the inmate's grievance.  *See* C.S. § 10-206(b); *see also* COMAR 12.07.01.02.D.

Filing a request for administrative remedy with the Warden of the Maryland prison in which one is incarcerated is the first of three steps in the Administrative Remedy Procedure  process provided by the Division of Correction to its prisoners. If this request is denied, the prisoner has ten calendar days to file an appeal with the Commissioner of Correction. If this appeal is denied, the prisoner has thirty days in which to file an appeal to the Inmate Grievance Office ("IGO").  *See* COMAR  12.07.01.03;  12.07.01.05.B;  *see also*  C.S.  §  10-206.    Complaints  are  reviewed preliminarily by the IGO.  *See* C.S. § 10-207; COMAR 12.07.01.06.  If the complaint is determined to be "wholly lacking in merit on its face," the IGO may dismiss it without a hearing.  C.S. § 10-207(b)(1).  The order of dismissal constitutes the final decision of the Secretary of DPSCS for purposes of judicial review.  C.S. § 10-207(b)(2)(ii).  However, if a hearing is deemed necessary by the IGO, the hearing is conducted by an administrative law judge with the Maryland Office of Administrative Hearings.  *See* C.J. § 10-208(c); COMAR 12.07.01.07-.08.  The conduct of such hearings is governed by statute.  C.S. § 10-208.

A decision of the administrative law judge denying all relief to the inmate is considered a

---

for which wages or a stipulated sum of money was paid by a correctional facility," C.S. § 10-304, for which a claim to a different administrative body, the Sundry Claims Board, is the exclusive remedy. *See Dixon v. DPSCS*, 175 Md. App. 384, 927 A.2d 445 (2007).  On the other hand, the grievance process does apply to a wide variety of claims that arise out of the conditions of confinement, even if the grievance process cannot provide a comprehensive remedy for such claims, such as tort claims of assault and battery against prison officers.  *See McCullough v. Wittner*, 314 Md. 602, 552 A.2d 881 (1989).

final agency determination.  However, a decision concluding that the inmate's complaint is wholly or partly meritorious constitutes a recommendation to the Secretary of DPSCS, who must make a final agency determination within fifteen days after receipt of the proposed decision of the administrative law judge.  *See* C.S. § 10-209(b)-(c).

In either event, the final agency determination is subject to judicial review in Maryland state court, so long as the claimant has exhausted his/her remedies.  *See* C.S. § 10-210.  But, an inmate need not seek judicial review in state court in order to satisfy the PLRA's administrative exhaustion requirement.  *See*, *e.g.*, *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir.) ("[A] prisoner who uses all administrative options that the state offers need not also pursue judicial review in state court."), *cert. denied*, 537 U.S. 949 (2002).

As a prisoner, plaintiff is subject to the strict requirements of the exhaustion provisions.  *See Porter v. Nussle*, *supra*, 534 U.S. at 528 (no distinction is made with respect to exhaustion requirement between suits alleging unconstitutional conditions and suits alleging unconstitutional conduct).  If defendants show that a claim is subject to the ARP process but has not been exhausted, the court may not consider the merits of the claim.  *See Jones v. Bock*, 549 U.S. at 220; *see also Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006).

The PLRA's exhaustion requirement is designed so that prisoners pursue administrative grievances until they receive a final denial of the claims, appealing through all available stages in the administrative process.  *Chase v. Peay*, 286 F. Supp. 2d 523, 530 (D. Md. 2003), *aff'd,* 98 Fed. App'x. 253 (4th Cir. 2004); *Gibbs v. Bureau of Prisons*, 986 F. Supp. 941, 943-44 (D. Md. 1997) (dismissing a federal prisoner's lawsuit for failure to exhaust, where plaintiff did not appeal his administrative claim through all four stages of the BOP's grievance process); *see also Booth v. Churner*, 532 U.S. 731, 735 (2001) (affirming dismissal of prisoner's claim for failure to exhaust

13

where he "never sought intermediate or full administrative review after prison authority denied relief"); *Thomas v. Woolum*, 337 F.3d 720, 726 (6th Cir. 2003) (noting that a prisoner must appeal administrative rulings "to the highest possible administrative level"); *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002) (prisoner must follow all administrative steps to meet the exhaustion requirement, but need not seek judicial review).

Administrative remedies must, however, be available to the prisoner, and this court is "obligated to ensure that any defects in administrative exhaustion were not procured from the action or inaction of prison officials." *Aquilar-Avellaveda v. Terrell*, 478 F.3d 1223, 1225 (10th Cir. 2007); *see Kaba v. Stepp*, 458 F.3d 678, 684 (7th Cir. 2006). The Fourth Circuit addressed the meaning of "available" remedies in *Moore v. Bennette*, 517 F. 3d 717, 725 (4th Cir. 2008):

> [A]n administrative remedy is not considered to have been available if a prisoner, through no fault of his own, was prevented from availing himself of it. *See Aquilar-Avellaveda v. Terrell*, 478 F. 3d 1223, 1225 (10th Cir. 2007); *Kaba v. Stepp*, 458 F. 3d 678, 684 (7th Cir. 2006). Conversely, a prisoner does not exhaust all available remedies simply by failing to follow the required steps so that remedies that once were available to him no longer are. *See Woodford v. Ngo*, 548 U.S. 81, 89 (2006). Rather, to be entitled to bring suit in federal court, a prisoner must have utilized all available remedies "in accordance with the applicable procedural rules," so that prison officials have been given an opportunity to address the claims administratively. *Id*. at 87. Having done that, a prisoner has exhausted his available remedies, even if prison employees do not respond. *See Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006).

Defendants have submitted evidence to document their claim that plaintiff failed to exhaust his remedies. And, Aurel has not shown that he has satisfied the administrative exhaustion requirement. Nor does the record suggest that defendants have forfeited their right to raise non-exhaustion as a defense. *See Chase v. Peay*, 286 F. Supp. 2d at 528.

The record shows that Aurel had access to the ARP grievance process, but did not fully grieve his claim regarding the confiscation of his fan. Therefore, the claim is subject to dismissal for

non-exhaustion.

Alternatively, I conclude that Aurel has otherwise failed to demonstrate an Eighth Amendment violation as to his conditions of confinement.[8]

Section 1983 of 42 U.S.C. provides that "[e]very person" who, under color of state law, causes the violation of another's federal rights shall be liable to the party injured by his conduct. *See Owens v. Baltimore City State's Attorneys Office*, ____ F.3d ____, No. 12-2173, slip op. at 44 (4th Cir. Sept. 24, 2014). Section 1983 "'is not itself a source of substantive rights,' but provides 'a method for vindicating federal rights elsewhere conferred.'" *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n. 3 (1979)). But, a suit under § 1983 allows "a party who has been deprived of a federal right under the color of state law to seek relief." *City of Monterey v. Del Monte Dunes at Monterey, Ltd*., 526 U.S. 687, 707 (1999).

To state a claim under § 1983, a plaintiff must allege that 1) a right secured by the Constitution or laws of the United States was violated, and 2) that the alleged violation was committed by a "person acting under the color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988); *see Crosby v. City of Gastonia*, 635 F.3d 634, 639 (4th Cir.), *cert. denied*, ____ U.S. ____, 132 S. Ct. 112 (2011).

The Eighth Amendment prohibits "unnecessary and wanton infliction of pain." *Gregg v. Georgia*, 428 U.S. 153, 173 (1976). "Scrutiny under the Eighth Amendment is not limited to those punishments authorized by statute and imposed by a criminal judgment." *De'Lonta v. Angelone*, 330

---

[8] This case is unlike the recent case of *Jackson v. Lightsey*, ____ F.3d ____, No. 13-7291 (4th Cir. Dec. 18, 2014), which involved review under Fed. R. Civ. P. 12(b)(6) with respect to the adequacy of a claim of deliberate indifference to serious medical needs.

F.3d 630, 633 (4th Cir. 2003) (*citing Wilson v. Seiter,* 501 U.S. 294, 297 (1991)).  Conditions that "deprive inmates of the minimal civilized measure of life's necessities" may amount to cruel and unusual punishment.  *Rhodes v. Chapman,* 452 U.S. 337, 347 (1981).  However, conditions that are merely restrictive, or even  harsh, "are part of the penalty that criminal offenders pay for their offenses against society."  *Id.*

"In order to establish the imposition of cruel and unusual punishment, a prisoner must prove two elements-that 'the deprivation of [a] basic human need was *objectively* sufficiently serious,' and that *'subjectively* the officials act[ed] with a sufficiently culpable state of mind.'"  *Shakka v. Smith,* 71 F.3d 162, 166 (4th Cir.1995) (emphasis in original; some internal quotations omitted; citation omitted).  "These requirements spring from the text of the amendment itself; absent intentionality, a condition imposed on an inmate cannot properly be called 'punishment,' and absent severity, such punishment cannot be called 'cruel and unusual.'"  *Iko v. Shreve,* 535 F.3d 225, 238 (4th Cir. 2008) (citing *Wilson ,* 501 U.S. at 298–300).

To establish a sufficiently culpable state of mind, there must be evidence that a known excessive risk of harm to the inmate's health or safety was disregarded.  *See Wilson*, 501 U. S. at 298.  In other words, "'the test is whether the guards know the plaintiff inmate faces a serious danger to his safety and they could avert the danger easily yet they fail to do so.'"  *Brown v. North Carolina Dept. of Corrections*, 612 F.3d 720, 723 (4th Cir. 2010) (quoting *Case v. Ahitow*, 301 F.3d 605, 607 (7th Cir. 2002)).

The objective prong of a conditions claim requires proof of an injury.  "[T]o withstand summary judgment on an Eighth Amendment challenge to prison conditions a plaintiff must produce evidence of a serious or significant physical or emotional injury resulting from the challenged

conditions." *Strickler v. Waters,* 989 F.2d 1375, 1381 (4th Cir. 1993); *see Odom v. South Carolina Dept. of Corrections,* 349 F.3d 765, 770 (4th Cir. 2003).  "Only extreme deprivations are adequate to satisfy the objective component of an Eighth Amendment claim regarding conditions of confinement." *De'Lonta v. Angelone,* 330 F.3d 630, 634 (4th Cir. 2003).

Although Aurel complains that he has been subject to increased health risks due to the heat in his cell and the absence of a fan,  the record shows that NBCI is equipped with a ventilation system that is routinely tested to ensure that it meets ACA guidelines; cell windows are opened for seven months of the year when the weather is warmer; and Aurel's asthma was not aggravated by the alleged heat and lack of a fan.

### IV. Conclusion

For the aforementioned reasons, the motion for summary judgment filed by defendants Shearin, Arnold, Soltas, Ortt, Lambert, Preston, and Parsons is granted and judgment shall be entered in their favor.[9]  Aurel's motion for temporary restraining order shall be denied.  A separate Order effecting the rulings made in this Memorandum is entered herewith.

Dated: December  23, 2014                         _____/s/_____
                                                 Ellen Lipton Hollander
                                                 United States District Judge

---

[9] As Aurel has failed to demonstrate an Eighth Amendment conditions of confinement claim, the complaint against unserved defendants Miller, Smith, Tuner, Parton and Ceph shall be dismissed.